# EXHIBIT D



Friday,
June 25, 2004

Part VI

# Securities and Exchange Commission

17 CFR Parts 228, 229, and 240
Ownership Reports and Trading by Officers, Directors and Principal Security Holders; Proposed Rule

## SECURITIES AND EXCHANGE COMMISSION

**17 CFR Parts 228, 229 and 240**

[Release Nos 34–49895; 35–27861; IC–26471; File No. S7–27–04]

**RIN 3235–AJ27**

### Ownership Reports and Trading by Officers, Directors and Principal Security Holders

**AGENCY:** Securities and Exchange Commission.

**ACTION:** Proposed rules.

**SUMMARY:** The Securities and Exchange Commission is proposing amendments to two rules that exempt certain transactions from the private right of action to recover short-swing profit provided by Section 16(b) of the Securities Exchange Act of 1934. The amendments are intended to clarify the exemptive scope of these rules, consistent with statements in previous Commission releases. We also propose to amend Item 405 of Regulations S–K and S–B to harmonize this item with the two-business day Form 4 due date and mandated electronic filing and Web site posting of Section 16 reports.

**DATES:** Comments should be received on or before August 9, 2004.

**ADDRESSES:** Comments may be submitted by any of the following methods:

*Electronic Comments*

- Use the Commission's Internet comment form (*http://www.sec.gov/rules/proposed.shtml*); or
- Send an E-mail to *rule-comments@sec.gov*. Please include File Number S7–27–04 on the subject line; or
- Use the Federal eRulemaking Portal (*http://www.regulations.gov*). Follow the instructions for submitting comments.

*Paper Comments*

- Send paper comments in triplicate to Jonathan G. Katz, Secretary, Securities and Exchange Commission, 450 Fifth Street, NW., Washington, DC 20549–0609.

All submissions should refer to File Number S7–27–04. This file number should be included on the subject line if e-mail is used. To help us process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's Internet Web site (*http://www.sec.gov/rules/proposed.shtml*). Comments are also available for public inspection and copying in the Commission's Public Reference Room, 450 Fifth Street, NW., Washington, DC 20549. All comments received will be posted without change; we do not edit personal identifying information from submissions. You should submit only information that you wish to make available publicly.

**FOR FURTHER INFORMATION CONTACT:** Anne Krauskopf, Senior Special Counsel, at (202) 942–2900, Division of Corporation Finance, Securities and Exchange Commission, 450 Fifth Street, NW., Washington, DC 20549–0402.

**SUPPLEMENTARY INFORMATION:** We are proposing amendments to Rules 16b–3[1] and 16b–7[2] under the Securities Exchange Act of 1934 ("Exchange Act"),[3] and Item 405 of Regulations S–K and S–B.[4]

### I. Executive Summary and Background

Section 16[5] of the Exchange Act applies to every person who is the beneficial owner of more than 10% of any class of equity security registered under Section 12 of the Exchange Act,[6] and each officer and director (collectively, "insiders") of the issuer of such security. Upon becoming an insider, or upon the Section 12 registration of that security, Section 16(a)[7] requires an insider to file an initial report with the Commission disclosing his or her beneficial ownership of all equity securities of the issuer. To keep this information current, Section 16(a) also requires insiders to report changes in such ownership, or the purchase or sale of a security-based swap agreement[8] involving such equity security.[9]

Section 16(b)[10] provides the issuer (or shareholders suing on behalf of the issuer) a private right of action to recover from an insider any profit realized by the insider from any purchase and sale (or sale and purchase) of any equity security of the issuer within any period of less than six months. This statute is designed to curb abuses of inside information by insiders. Unlike insider trading prohibitions under general antifraud provisions,[11] which are violated if a trader knew or was reckless in not knowing of material non-public information, Section 16(b) operates without consideration of whether an insider actually was aware of material non-public information. Section 16(b) operates strictly, providing a private right of action to recover short-swing profits by insiders, on the theory that short-swing transactions (a purchase and sale within six months) present a sufficient likelihood of involving abuse of inside information that a strict liability prophylactic approach is appropriate.

Section 16(b) grants the Commission authority to exempt, by rules and regulations, "any transaction or transactions * * * not comprehended within the purpose of this subsection."[12] Pursuant to this authority, we have adopted various exemptive rules, including Rule 16b–3—"Transactions between an issuer and its officers or directors,"[13] and Rule 16b–7—"Mergers, reclassifications, and consolidations."[14] These exemptive rules provide that transactions that satisfy their conditions will not be subject to Section 16(b) short-swing profit recovery.

The recent opinion of the U.S. Court of Appeals for the Third Circuit (the "Third Circuit") in *Levy v. Sterling Holding Company, LLC.* ("*Levy v. Sterling*"),[15] casts doubt as to the nature and scope of transactions exempted from Section 16(b) short-swing profit recovery by Rules 16b–3 and 16b–7. The Third Circuit held that neither rule exempted directors' acquisitions of issuer securities in a reclassification undertaken by the issuer preparatory to its initial public offering, matching those acquisitions for Section 16(b) profit recovery with the directors' sales within six months in the initial public offering.

In particular, the *Levy v. Sterling* opinion reads Rules 16b–3 and 16b–7 to require satisfaction of conditions that are neither contained in the text of the rules nor intended by the Commission. The resulting uncertainty regarding the exemptive scope of these rules has made it difficult for issuers and insiders to plan legitimate transactions. We seek to resolve any doubt as to the meaning and interpretation of these rules by reaffirming the views we have expressed

---

[1] 17 CFR 240.16b–3.
[2] 17 CFR 240.16b–7. The proposed amendments would not revise paragraph (b) of this rule.
[3] 15 U.S.C. 78a *et seq.*
[4] 17 CFR 229.405 and 17 CFR 228.405.
[5] 15 U.S.C. 78p.
[6] 15 U.S.C. 78*l*.
[7] 15 U.S.C. 78p(a).
[8] As defined in Section 206B of the Gramm-Leach-Bliley Financial Modernization Act of 1999, as amended by H.R. 4577, Pub. L. No. 106–554, 114 Stat. 2763.
[9] Insiders file transaction reports on Form 4 [17 CFR 249.104] and Form 5 [17 CFR 249.105].
[10] 15 U.S.C. 78p(b).
[11] Exchange Act Section 10(b) [15 U.S.C. 78j(b)] and Exchange Act Rule 10b–5 [17 CFR 240.10b–5].
[12] 15 U.S.C. 78p(b).
[13] The current version of Rule 16b–3 was adopted in Exchange Act Release No. 37260 (May 31, 1996) [61 FR 30376].
[14] As amended in Exchange Act Release No. 28869 (Feb. 8, 1991) [56 FR 7242].
[15] 314 F.3d 106 (3d. Cir. 2002), *cert. denied*, *Sterling Holding Co. v. Levy*, 124 S. Ct. 389 (U.S., Oct. 14, 2003).

Federal Register/Vol. 69, No. 122/Friday, June 25, 2004/Proposed Rules    35983

previously regarding their appropriate construction.[16] The amendments to the text of the rules we propose in this release will clarify the regulatory conditions that apply to these exemptions, consistent with our previously expressed views.

Item 405 of Regulations S–K and S–B requires issuer disclosure of Section 16 reporting delinquencies. This disclosure is required in the issuer's proxy or information statement[17] for the annual meeting at which directors are elected, and its Form 10–K,[18] 10–KSB[19] or N–SAR.[20] Item 405(b)(1) permits an issuer to presume that a form it receives within three calendar days of the required filing date was filed with the Commission by the required filing date. In light of the two-business day due date generally applicable to Form 4 and the requirements of mandatory EDGAR filing and Web site posting of Section 16 reports, this presumption no longer is appropriate and we propose to amend Item 405 to delete it.

## II. Rule 16b–3

Rule 16b–3 exempts from Section 16(b) certain transactions between issuers of securities and their officers and directors. In its *Levy* v. *Sterling* opinion, the Third Circuit construed Rule 16b–3(d), which applies to "grants, awards, or other acquisitions" to limit this exemption to transactions that have some compensation-related aspect. Specifically, since "grants" and "awards" are compensation-related, the Third Circuit reasoned that "other acquisitions" also must be compensation-related in order to be exempted by Rule 16b–3(d). This construction of Rule 16b–3(d) is not in accord with our clearly expressed intent in adopting the rule.

The current version of Rule 16b–3 was adopted in 1996, and implemented substantial revisions designed to simplify the conditions that must be satisfied for the exemption to apply. In contrast to prior versions of Rule 16b–3, which had exempted only employee benefit plan transactions, the 1996 revisions broadened the Rule 16b–3 exemption and extended it to other transactions between issuers and their officers and directors. The revisions focused on the distinction between market transactions by officers and directors, which present opportunities for profit based on non-public information that Section 16(b) is intended to discourage, and transactions between an issuer and its officers and directors, which are subject to fiduciary duties under State law.[21] In adopting the revised rule, we explicitly stated that "a transaction need not be pursuant to an employee benefit plan or any compensatory program to be exempt, nor need it specifically have a compensatory element."[22]

Rule 16b–3(a) provides that "A transaction between the issuer (including an employee benefit plan sponsored by the issuer) and an officer or director of the issuer that involves issuer equity securities shall be exempt from section 16(b) of the Act if the transaction satisfies the applicable conditions set forth in this section." As this makes clear, the only limitations on the exemption for transactions between the issuer and its officer or director are the objective conditions set forth in later subsections of the rule, each of which applies to a different category of transactions.

Rule 16b–3(d), entitled "Grants, awards and other acquisitions from the issuer," exempts from Section 16(b) liability "Any transaction involving a grant, award or other acquisition from the issuer (other than a Discretionary Transaction)"[23] if any one of three alternative conditions is satisfied. These conditions require:

• Approval of the transaction by the issuer's board of directors, or board committee composed solely of two or more Non-Employee Directors;[24]
• Approval or ratification of the transaction, in compliance with Exchange Act Section 14,[25] by the issuer's shareholders;[26] or

• The officer or director to hold the acquired securities for a period of six months following the date of acquisition.[27]

Consistent with the statements in the Adopting and Proposing Releases regarding the scope of the rule, the Commission staff has interpreted Rule 16b–3(d) to exempt a number of transactions outside of the compensatory context, such as:

• The acquisition of acquiror equity securities (including derivative securities) by acquiror officers and directors through the conversion of target equity securities in connection with a corporate merger;[28] and
• An officer's or director's indirect pecuniary interest in transactions between the issuer and certain other persons or entities.[29]

The application of Rule 16b–3(d) to extraordinary transactions also has been recognized in Section 16(b) litigation. In its 2002 opinion in *Gryl* v. *Shire Pharmaceuticals Group PLC*,[30] the U.S. Court of Appeals for the Second Circuit construed Rule 16b–3(d) to exempt acquiror directors' acquisition of acquiror options upon conversion of their target options in a corporate merger.

To eliminate the uncertainty generated by the *Levy* v. *Sterling* opinion, the Commission proposes to amend Rule 16b–3(d). As amended, this paragraph would be entitled "Acquisitions from the issuer," and would provide that any transaction involving an acquisition from the issuer (other than a Discretionary Transaction), including without limitation a grant or award, will be exempt if any one of the Rule's three existing alternative conditions is satisfied.

Rule 16b–3(e) exempts an officer's or director's disposition to the issuer of issuer equity securities that is approved in advance in the manner prescribed by Rule 16b–3(d)(1) (by the issuer's board of directors, or board committee composed solely of two or more Non-Employee Directors) or Rule 16b–3(d)(2) (by the issuer's shareholders in

---

[16] See the discussion of previous Commission releases in Sections II and III, below. See also Memorandum of the Securities and Exchange Commission, *Amicus Curiae*, in Support of Appellees' Petition for Rehearing or Rehearing *En Banc* (Feb. 27, 2003). This brief is posted at http://www.sec.gov/litigation/briefs/levy-sterling022703.htm.

[17] 17 CFR 240.14a–101, Item 7.

[18] 17 CFR 249.310.

[19] 17 CFR 249.310b.

[20] 17 CFR 249.330; 17 CFR 274.101.

[21] Exchange Act Release No. 36356 (Oct. 11, 1995) [60 FR 53832] ("Proposing Release").

[22] Exchange Act Release No. 37260 (May 31, 1996) [61 FR 30376] ("Adopting Release").

[23] "Discretionary Transaction" is defined in Rule 16b–3(b)(1). A Discretionary Transaction is exempted by Rule 16b–3 only if it satisfies the conditions of Rule 16b–3(f).

[24] Rule 16b–3(d)(1). "Non-Employee Director" is defined in Rule 16b–3(b)(3).

[25] 15 U.S.C. 78n.

[26] Rule 16b–3(d)(2). With respect to shareholder, board and Non-Employee Director committee approval, Rule 16b–3(d) requires approval in advance of the transaction. Shareholder approval must be by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of the majority of the securities of the issuer entitled to vote. Shareholder ratification, consistent with the same procedural conditions, may confer the exemption only if such ratification occurs no later than the date of the next annual meeting of shareholders following the transaction.

[27] Rule 16b–3(d)(3).

[28] Division of Corporation Finance interpretive letter to Skadden, Arps, Slate, Meagher & Flom LLP (Jan. 12, 1999).

[29] Division of Corporation Finance interpretive letter to American Bar Association (Feb. 10, 1999). The other persons or entities are immediate family members, partnerships, corporations and trusts, in each case where rules under Section 16(a) require the officer or director to report an indirect pecuniary interest in the transaction.

[30] 298 F.3d 136 (2d Cir. 2002).

compliance with Exchange Act Section 14). Because these exemptive conditions of Rules 16b–3(d) and 16b–3(e) are identical [31] and were intended to operate the same way, we believe that clarification should apply to both Rules 16b–3(d) and 16b–3(e). We propose to further amend Rule 16b–3 by adding Note 4, to state:

The exemptions provided by paragraphs (d) and (e) of this section apply to any securities transaction by the issuer with an officer or director of the issuer that satisfies the specified conditions of paragraph (d) or (e) of this section, as applicable. These exemptions are not conditioned on the transaction being intended for a compensatory or other particular purpose.

We request comment on the proposed amendments to Rule 16b–3. Specifically, would the proposed amendments accomplish the goal of clarifying the exemptive scope of Rule 16b–3 as we originally intended the rule to apply? If not, what other language would accomplish this goal more effectively? Would the proposed amendment to Rule 16b–3(d) preclude the restrictive construction applied in the *Levy* v. *Sterling* opinion?

As described above, proposed Note 4 reflects the fact that certain exemptive conditions of Rules 16b–3(d) and 16b–3(e) are identical and were not intended to be construed differently. On a prospective basis, however, does this identical treatment remain appropriate? Specifically, should a compensatory or other specified purpose ordinarily be necessary to exempt an officer's or director's disposition of issuer equity securities to the issuer, so that proposed Note 4 should apply only to Rule 16b–3(d) acquisitions?

Alternatively, should proposed Note 4 be tailored more narrowly to clarify that Rules 16b–3(d) and 16b–3(e) are available to exempt officers' and directors' participation in transactions similar to the transaction at issue in *Levy* v. *Sterling*? For example, should proposed Note 4 instead state that an officer's or director's participation in an extraordinary securities transaction with the issuer (such as a merger, reclassification, or exchange offer) that satisfies the exemptive conditions of Rule 16b–3(d) or Rule 16b–3(e) is exempt?

III. Rule 16b–7

Rule 16b–7, entitled "Mergers, reclassifications, and consolidations," exempts from Section 16(b) certain transactions that do not involve a significant change in the issuer's business or assets. The rule is typically relied upon in situations where a company reincorporates in a different state or reorganizes its corporate structure. Rule 16b–7(a)(1) provides that the acquisition of a security pursuant to a merger or consolidation is not subject to Section 16(b) if the security relinquished in exchange is of a company that, before the merger or consolidation, owned:

• 85% or more of the equity securities of all other companies party to the merger or consolidation, or
• 85% or more of the combined assets of all companies undergoing merger or consolidation.

Rule 16b–7(a)(2) exempts the corresponding disposition, pursuant to a merger or consolidation, of a security of an issuer that before the merger or consolidation satisfied either of these 85% ownership tests.

While the *Levy* v. *Sterling* opinion acknowledged that Rule 16b–7 could exempt a reclassification, it construed Rule 16b–7 not to exempt an acquisition pursuant to a reclassification that:

• Resulted in the insiders owning equity securities (common stock) with different risk characteristics from the securities (preferred stock) extinguished in the transaction, where the preferred stock previously had not been convertible into common stock; and
• Thus involved an increase in the percentage of insiders' common stock ownership, based on the fact that the insiders owned some common stock before the reclassification extinguished their preferred stock in exchange for common stock.

The opinion thus imposed upon reclassifications exemptive conditions that are not found in the language of Rule 16b–7 and would not apply to a merger or consolidation relying upon the rule. Moreover, these conditions significantly restrict the exemption's availability for reclassifications by narrowing it to the less frequent situation where the original security and the security for which it is exchanged have the same characteristics. Imposing these conditions is inconsistent with the text of Rule 16b–7, the rule's interpretive history and the Commission's intent.

Although Rule 16b–7 as originally adopted in 1952 only applied to "mergers" and "consolidations,"[32] the Commission staff construed it as also applying to reclassifications.

In a 1981 interpretive release, the staff stated that "Rule 16b–7 does not require that the security received in exchange be similar to that surrendered, and the rule can apply to transactions involving reclassifications."[33] In 1991, the Commission amended the title of Rule 16b–7 to include "reclassifications," explaining that this amendment was not intended to effect any "substantive" changes to the rule, and reaffirmed the staff statement in the 1981 release that Rule 16b–7 applies to reclassifications.[34]

Although the rule does not contain specific standards for exempting reclassifications, the staff has applied to reclassifications the same standards as for mergers and consolidations. In relevant respects a reclassification is little different from a merger exempted by Rule 16b–7. In a merger exempted by the rule, the transaction satisfies either 85% ownership standard, so that the merger effects no major change in the issuer's business or assets. Similarly, in a reclassification the issuer owns all assets involved in the transaction and remains the same, with no change in its business or assets. The similarities are readily illustrated by the fact that an issuer also could effect a reclassification by forming a wholly-owned "shell" subsidiary, merging the issuer into the subsidiary, and exchanging subsidiary securities for the issuer's securities.

Consistent with the 1981 and 1991 Releases, we propose to eliminate uncertainty regarding Rule 16b–7 generated by the *Levy* v. *Sterling* opinion by amending Rule 16b–7 so that, consistent with the rule's title, the text would state "merger, reclassification or consolidation" each place it currently states "merger or consolidation." In addition, a proposed new paragraph would specify that the exemption specified by Rule 16b–7 applies to any securities transaction that satisfies the conditions of the rule and is not conditioned on the transaction satisfying any other conditions.[35]

We request comment on the proposed amendments to Rule 16b–7. Specifically, would the proposed amendments accomplish the goal of clarifying the exemptive scope of Rules 16b–7 consistent with the statements of the 1981 and 1991 Releases and our amicus brief in *Levy* v. *Sterling*? If not,

---

[31] Although shareholder ratification after the transaction exempts an acquisition under Rule 16b–3(d), it does *not* exempt a disposition under Rule 16b–3(e).

[32] Exchange Act Release No. 4696, 1952 SEC LEXIS 63 (Apr. 1952).

[33] Exchange Act Release No. 18114 (Sept. 24, 1981) [46 FR 46147] ("1981 Release"), at Q. 142.

[34] Exchange Act Release No. 28869 (Feb. 8, 1991) [56 FR 7242] ("1991 Release"). More recently, in a 2002 proposing release we expressly described reclassifications as among the transactions exempted by Rule 16b–7. Exchange Act Release No. 45742 (Apr. 12, 2002) [67 FR 19914], at n. 56.

[35] Proposed Rule 16b–7(c). Current Rule 16b–7(c) would be redesignated as Rule 16b–7(d).

Federal Register / Vol. 69, No. 122 / Friday, June 25, 2004 / Proposed Rules    35985

what other language or regulatory action would better accomplish this goal?

For example, Rule 16b–7(b) currently states that "merger" within the meaning of the rule includes "the sale or purchase of substantially all the assets of one company by another in exchange for equity securities which are then distributed to the security holders of the company that sold its assets." Should we instead amend Rule 16b–7(b) to clarify that "merger" within the meaning of the rule also includes a reclassification? Should the proposed paragraph stating that the Rule 16b–7 exemption is not conditioned on the transaction satisfying any other conditions specify that the particular conditions applied in the *Levy* v. *Sterling* opinion do not apply?

Is any further amendment or regulatory action necessary to clarify that other transactions that do not involve a merger, but could be effected by merger, also are exempted by Rule 16b–7? For example, such transactions include a statutory exchange,[36] conversion to a different form of entity,[37] and redomicile or continuance in a different jurisdiction.[38] Should we amend Rule 16b–7(b) to clarify that any of these transactions also is included as a "merger" within the meaning of the rule?

### IV. Item 405 of Regulations S–K and S–B

As noted above, issuers must disclose their insiders' Section 16 reporting delinquencies as required by Item 405 of Regulations S–K and S–B. Item 405(b)(1) currently provides that "a form received by the registrant within three calendar days of the required filing date may be presumed to have been filed with the Commission by the required filing date." When Item 405 was adopted in 1991,[39] Form 4 was due within ten days after the close of the calendar month in which the reported transaction took place. Further, all Section 16 reports were filed on paper, since we did not permit insiders to file Section 16 reports electronically on EDGAR on a voluntary basis until 1995.[40]

However, the Sarbanes-Oxley Act of 2002[41] amended Section 16(a) to require two-business day reporting of changes in beneficial ownership, effective August 29, 2002.[42] The Sarbanes-Oxley Act also amended Section 16(a) to require insiders to file these reports electronically, and the Commission and issuers with corporate Web sites to post these reports on their Web sites not later than the end of the business day following filing.[43] We adopted rules to implement these requirements effective June 30, 2003.[44]

In adopting the Web site posting requirement, we noted that Rule 16a–3(e)[45] requires an insider, not later than the time a Section 16 report is transmitted for filing with the Commission, to send or deliver a duplicate to the person designated by the issuer to receive such statements, or absent such designation, to the issuer's corporate secretary or person performing equivalent functions. We stated that we would expect an issuer, in making this designation, also to designate an electronic transmission medium compatible with the issuer's own systems, so that a form sent by that medium at the time specified by Rule 16a–3(e) would be received by the issuer in time to satisfy the Web site posting deadline.[46]

In light of the Section 16(a) amendments enacted by the Sarbanes-

---

[40] Securities Act Release No. 7241 (Nov. 13, 1995) [60 FR 57682].

[41] Pub. L. No. 107–204, 116 Stat. 745.

[42] Section 16(a)(2)(C), as amended by Section 403 of the Sarbanes-Oxley Act. Effective on the same date, the Commission adopted rule amendments to implement the accelerated Form 4 due date. Exchange Act Release 46421 (Aug. 27, 2002) [67 FR 56462].

[43] Section 16(a)(4), as amended by Section 403 of the Sarbanes-Oxley Act.

[44] Securities Act Release No. 8230 (May 7, 2003) [68 FR 25788, with corrections at 68 FR 37044] ("Mandated EDGAR Release"). Recognizing that insiders may experience temporary difficulties in transitioning to mandated electronic filing, Section II.E of the Mandated EDGAR Release provided temporary Item 405 disclosure for a Form 4 that is (i) filed not later than one business day following the regular due date, and (ii) filed during the first 12 months following the effective date of mandated electronic filing. This temporary relief applies only to Forms 4 filed between June 30, 2003 and June 30, 2004.

[45] 16 CFR 240.16a–3(e).

[46] Mandated EDGAR Release at Section II.B. To assure that insiders are aware of the designated person and electronic transmission medium, we encouraged issuers to post this information on their Web sites together with the Section 16 filings. We also noted that the concern about timely obtaining an electronic copy of a filing would not arise for issuers that rely on a hyperlink (for example, to EDGAR) to satisfy their Web site posting requirement.

Oxley Act, the Item 405(b)(1) presumption of timeliness for a Section 16(a) report received by the issuer within three calendar days of the required filing date no longer is appropriate. By reviewing Section 16 reports posted on EDGAR, an issuer is readily able to evaluate their timeliness. Moreover, a report that is not received by the issuer in time for the issuer to post that report on its Web site by the end of the business day following filing should not be presumed to have been timely filed. Accordingly, we propose to amend Item 405 of Regulations S–K and S–B to delete the Item 405(b)(1) presumption, without substituting a different presumption or otherwise modifying the substance of Item 405.

We request comment on the proposed amendment to Item 405. Specifically, would the proposed amendment harmonize the Item 405 delinquency disclosure requirement with the accelerated filing, electronic filing and Web site posting requirements adopted by the Sarbanes-Oxley Act amendments to Section 16(a) and our rules implementing those statutory amendments? Will issuers have any difficulty monitoring and reporting if we remove the presumption?

### V. General Request for Comment

We invite any interested person wishing to submit written comments on the proposed amendments to Rule 16b–3, Rule 16b–7, Item 405 of Regulations S–K and S–B and any other matters that might have an impact on the proposed amendments, to do so. We specifically request comment from persons who are subject to Section 16, and from issuers, investors, attorneys and others who use Section 16 information or are interested in the application of Section 16(b).

We will consider all comments responsive to this inquiry in complying with our responsibilities under Section 23(a) of the Exchange Act.[47]

### VI. Paperwork Reduction Act

Forms 3 (OMB Control No. 3235–0104), 4 (OMB Control No. 3235–0287) and 5 (OMB Control No. 3235–0362) prescribe transaction and beneficial ownership information that an insider must report under Section 16(a). Preparing and filing a report on any of these forms is a collection of information.

Adoption of the Rule 16b–3 and Rule 16b–7 amendments proposed today would not change the transaction and beneficial ownership information that insiders currently are required to report on these forms. We therefore believe

---

[36] The staff has stated that "the acquisition and disposition of stock in a statutory exchange would be exempt under Rule 16b–7, assuming all of the conditions of the rule are satisfied." 1991 Release, at Q. 142.

[37] Some state statutes allow a corporation to convert to a different form of organization, such as a partnership, limited liability company or business trust, and vice versa, without merging into a newly-formed entity. See e.g., Del. Code Ann. Title 8 §§ 265 and 266.

[38] Some state statutes allow a corporation incorporated in a different jurisdiction to register within the state and become a domestic corporation within the state, or continue as if incorporated in the state, without merging into a newly-formed entity. See e.g., Wyoming Statutes §§ 17–16–1701, 17–16–1702 and 17–16–1710.

[39] Item 405 was adopted in the 1991 Release.

[47] 15 U.S.C. 78w(a).

that the overall information collection burden would remain the same because the same information will remain reportable.

The proposed deletion of the Item 405 presumption of timeliness for a Section 16 report received by the issuer within three calendar days of the required filing date may result in some companies reporting more Section 16 reports as delinquent in their Forms 10-K (OMB Control No. 3235-0063), 10-KSB (OMB Control No. 3235-0420) or N-SAR (OMB Control No. 3235-0330), and proxy (OMB Control No. 3235-0059) or information statements (OMB Control No. 3235-0057) for the annual meeting at which directors are elected. However, we believe that any such increased collection burden associated with those filings would be so minimal that it cannot be quantified.

## VII. Cost-Benefit Analysis

The amendments proposed today primarily would clarify existing rules. The *Levy* v. *Sterling* opinion has created uncertainty whether Rules 16b-3 and 16b-7 exempt transactions that they previously were commonly understood to exempt, making it difficult for issuers to plan legitimate transactions in reliance on these rules. The proposed amendments are intended to clarify the exemptive scope of Rules 16b-3 and 16b-7, consistent with statements in our previous releases and our amicus brief in *Levy* v. *Sterling*. Without such clarification, insiders may be exposed unnecessarily to significant potential costs to the extent that a private action under Section 16(b) recovers short-swing profits with respect to a transaction that either of these rules was intended to exempt. For example, *Levy* v. *Sterling* involved alleged short-swing insider trading profits of more than $72 million. These costs also include potential litigation costs, and costs incurred to postpone a non-exempt transaction, such as the initial public offering involved in that case, more than six months following a transaction that properly is exempted by Rule 16b-3 or Rule 16b-7.

Because the proposed amendments would clarify that the exemptive scope of Rules 16b-3 and 16b-7 is consistent with our previous statements, issuers and insiders would not incur additional costs to effect legitimate transactions in reliance on the rules as proposed to be amended. Issuers and shareholders also would not incur additional costs because the proposed amendments would not deprive issuers and shareholders of short-swing profit recovery to which they were intended to be entitled. Likewise, clarification of the rules should reduce litigation risk, and therefore costs, of some actions seeking short-swing profits.

Conversely, the proposed amendments should improve the ability to plan legitimate transactions with a clear understanding whether they will be exempt under Rule 16b-3 or Rule 16b-7, thereby providing significant benefits. These benefits, like the costs, are difficult to quantify.

The proposed amendment to Item 405 of Regulations S-K and S-B to delete the presumption of timeliness for a Section 16 report received by the issuer within three calendar days of the required filing date may result in some issuers reporting more Section 16 reports as delinquent in their Forms 10-K, 10-KSB or N-SAR, and their proxy or information statements for the annual meeting at which directors are elected. However, Section 16 reports are posted on EDGAR, and thus are readily available to issuers to evaluate their timeliness. Further, because Section 16 requires an issuer to post a Section 16 report on its Web site by the end of the business day following filing, issuers are able to evaluate filing timeliness on an on-going basis. Consequently, deletion of the Item 405 timeliness presumption would not impose significant additional costs on issuers. The benefit of the proposal would be to provide investors with Item 405 disclosure that is fully consistent with accelerated reporting, mandatory electronic filing and Web site posting amendments to Section 16(a) effected by the Sarbanes-Oxley Act.

To assist in a full evaluation of the costs and benefits of the proposals, we seek the views of and other data from the public.

## VIII. Effect on Efficiency, Competition and Capital Formation

Section 23(a)(2) of the Exchange Act[48] requires us, when adopting rules under the Exchange Act, to consider the impact that any new rule would have on competition. In addition, Section 23(a)(2) prohibits us from adopting any rule that would impose a burden on competition not necessary or appropriate in furtherance of the purposes of the Exchange Act. Furthermore, Section 2(b) of the Securities Act,[49] Section 3(f) of the Exchange Act[50] and Section 2(c) of the Investment Company Act of 1940[51] require us, when engaging in rulemaking where we are required to consider or determine whether an action is necessary or appropriate in the public interest, to consider whether the action will promote efficiency, competition, and capital formation.

The *Levy* v. *Sterling* opinion has created uncertainty whether Rules 16b-3 and 16b-7 exempt transactions that the Commission intended to exempt, making it difficult for issuers to plan legitimate transactions in reliance on these rules. This uncertainty has generated economic inefficiency by introducing potential litigation costs, and costs incurred to postpone a non-exempt transaction more than six months following a transaction that properly is exempted by Rule 16b-3 or Rule 16b-7.

The proposed amendments are intended to clarify the exemptive scope of Rules 16b-3 and 16b-7, consistent with statements in our previous releases and our amicus brief in *Levy* v. *Sterling*. This should improve issuers' and insiders' ability to plan transactions with a clear understanding whether either rule will provide an exemption. Informed transactional decisions generally promote market efficiency and capital formation. We believe the proposed amendments to Rules 16b-3 and 16b-7 would not impose a burden on competition. The proposed amendment to Item 405 of Regulations S-K and S-B to delete the timeliness presumption also should not impose a burden, since issuers are readily able to evaluate the timeliness of Section 16 reports by examining the reports as filed on EDGAR.

We request comment on whether the proposed amendments, if adopted, would impose a burden on competition. We also request comment on whether the proposed amendments, if adopted, would promote efficiency, competition and capital formation. Finally, we request commenters to provide empirical data and other factual support for their views if possible.

## IX. Initial Regulatory Flexibility Act Analysis

We have prepared an Initial Regulatory Flexibility Analysis, in accordance with 5 U.S.C. 603, concerning the amendments proposed today.

### A. *Reasons for and Objectives of the Proposed Amendments*

The purpose of the proposed amendments is to clarify the exemptive scope of Rules 16b-3 and 16b-7, and, consistent with the Sarbanes-Oxley Act amendments to Section 16(a), to delete the timeliness presumption in Item 405 of Regulations S-K and S-B.

---

[48] 15 U.S.C. 78w(a)(2).
[49] 15 U.S.C. 77b(b).
[50] 15 U.S.C. 78c(f).
[51] 15 U.S.C. 80a-2(c).

### B. Legal Basis

The proposed amendments to Item 405 of Regulations S–K and S–B and Exchange Act Rules 16b–3 and 16b–7 would be adopted pursuant to Sections 3(a)(11),[52] 3(a)(12),[53] 3(b),[54] 10(a),[55] 12(h),[56] 13(a),[57] 14,[58] 16 and 23(a)[59] of the Exchange Act, Sections 17[60] and 20[61] of the Public Utility Holding Company Act of 1934, Sections 2(c), 30[62] and 38[63] of the Investment Company Act of 1940, and Section 3(a)[64] of the Sarbanes-Oxley Act of 2002.

### C. Small Entities Subject to the Proposed Amendments

The proposed amendments would affect companies that are small entities. Exchange Act Rule 0–10(a)[65] defines an issuer, other than an investment company, to be a "small business" or "small organization" if it had total assets of $5 million or less on the last day of its most recent fiscal year. As of March 30, 2003, we estimated that there were approximately 8840 insiders[66] that may be considered small entities. The proposed Rule 16b–7 amendment would apply to all of these insiders. The proposed Rule 16b–3 amendments would apply only to such insiders who are directors or officers.

We estimate that there are approximately 2,500 issuers, other than investment companies, that may be considered small entities. For purposes of the Regulatory Flexibility Act, an investment company is a small entity if it, together with other investment companies, has net assets of $50 million or less as of the end of its most recent fiscal year. As of June 2002, we estimate that there were 36 closed-end investment companies, and 29 business development companies that are small entities. The proposed Item 405 amendments will apply to all of these small entities.

### D. Reporting, Recordkeeping and Other Compliance Requirements

The proposed amendments to Item 405 may impose additional disclosure requirements to the extent that issuers may be required to disclose additional untimely Section 16 filings by their insiders. However, see assume that this burden is very small, if it exists at all, because the changes effected by the Sarbanes-Oxley Act likely made the presumption irrelevant. No other new reporting, recordkeeping or compliance requirements would be imposed. Other than the potential additional Item 405 disclosure, the primary impact of these proposals relates to clarifying the exemptive scope of Rules 16b–3 and 16b–7.

### E. Overlapping or Conflicting Federal Rules

We do not believe that any current Federal rules duplicate, overlap or conflict with the proposed amendments.

### F. Significant Alternatives

The Regulatory Flexibility Act directs us to consider significant alternatives that would accomplish the stated objectives, while minimizing any significant adverse impact on small businesses. We considered the following types of alternatives:

1. The establishment of different compliance or reporting requirements or timetables that take into account the resources available to small entities;
2. The clarification, consolidation or simplification of compliance and reporting requirements under the rule for such small entities;
3. The use of performance rather than design standards; and
4. An exemption from coverage of the rule, or any part thereof, for small entities.

Regarding Alternative 1, we believe that differing compliance or reporting requirements for small entities would be inconsistent with Section 16, the Commission's intent when it adopted these rules, and the Commission's purpose of making the application of these rules more uniform. Regarding Alternative 2, the proposed amendments are concise and would clarify the Rule 16b–3 and Rule 16b–7 exemptive conditions and the Item 405 reporting requirement for all entities, including small entities. Regarding Alternative 3, we believe that design rather than performance standards are appropriate because use of performance standards for small entities would not be consistent with the statutory purpose of Section 16. Finally, an exemption for small entities is not appropriate because these amendments are designed to harmonize the application of the exemptive rules.

### G. Solicitation of Comments

We encourage the submission of written comments with respect to any aspect of this initial regulatory flexibility analysis, especially empirical data on the impact on small businesses. In particular we request comment on: (1) The number of small entities that would be affected by the proposed amendments; and (2) whether these amendments would increase the reporting, recordkeeping and other compliance requirements for small businesses. Such written comments will be considered in the preparation of the final regulatory flexibility analysis, if the proposed amendments are adopted.

## X. Small Business Regulatory Enforcement Fairness Act

For purposes of the Small Business Regulatory Enforcement Fairness Act of 1996[67] ("SBREFA") a rule is "major" if it has resulted, or is likely to result in:

• An annual effect on the economy of $100 million or more;
• A major increase in costs or prices for consumers or individual industries; or
• Significant adverse effects on competition, investment or innovation.

We request comment on whether our proposals would be a "major rule" for purposes of SBREFA. We solicit comment and empirical data on (1) the potential effect on the U.S. economy on an annual basis; (2) any potential increase in costs or prices for consumers or individual industries; and (3) any potential effect on competition, investment or innovation.

## XI. Statutory Basis

The amendments contained in this release are proposed under the authority set forth in Sections 3(a)(11), 3(a)(12), 3(b), 10(a), 12(h), 13, 14, 16 and 23(a) of the Exchange Act, Sections 17 and 20 of the Public Utility Holding Company Act of 1934, Sections 2(c), 30 and 38 of the Investment Company Act of 1940, and Section 3(a) of the Sarbanes-Oxley Act of 2002.

### Text of Proposed Rule Amendments

### List of Subjects in 17 CFR Parts 228, 229 and 240

Reporting and recordkeeping requirements, Securities.

For the reasons set forth above, we propose to amend title 17, chapter II of

---

[52] 15 U.S.C. 78c(a)(11).
[53] 15 U.S.C. 78c(a)(12).
[54] 15 U.S.C. 78c(b).
[55] 15 U.S.C. 78j(a).
[56] 15 U.S.C. 78l(h).
[57] 15 U.S.C. 78m(a).
[58] 15 U.S.C. 78n.
[59] 15 U.S.C. 78w(a).
[60] 15 U.S.C. 79q.
[61] 15 U.S.C. 79t.
[62] 15 U.S.C. 80a–29.
[63] 15 U.S.C. 80a–37.
[64] 15 U.S.C. 7202(a).
[65] 17 CFR 240.0–10(a).
[66] We estimated the number of small entity non-investment company insiders based on our estimates of the total number of insiders; the percentage of these insiders that are greater than ten percent holders; the percentage of these greater than ten percent holders that are non-natural persons; and the percentage of these non-natural persons that are small entities.

[67] Pub. L. No. 104–121 tit. II, 110 Stat. 857 (1996).

**35988** Federal Register / Vol. 69, No. 122 / Friday, June 25, 2004 / Proposed Rules

the Code of Federal Regulations as follows.

## PART 228—INTEGRATED DISCLOSURE SYSTEM FOR SMALL BUSINESS ISSUERS

1. The authority citation for part 228 continues to read in part as follows:

Authority: 15 U.S.C. 77e, 77f, 77g, 77h, 77j, 77k, 77s, 77z–2, 77z–3, 77aa(25), 77aa(26), 77ddd, 77eee, 77ggg, 77hhh, 77jjj, 77nnn, 77sss, 78l, 78m, 78n, 78o, 78u–5, 78w, 78ll, 78mm, 80a–8, 80a–29, 80a–30, 80a–37, 80b–11, and 7201 *et seq.*; and 18 U.S.C. 1350.

\* \* \* \* \*

2. Amend § 228.405 by revising the introductory text to paragraph (a), paragraph (a)(2) and paragraph (b) to read as follows:

### § 228.405 (Item 405)  Compliance With Section 16(a) of the Exchange Act.

\* \* \* \* \*

(a) Based solely upon a review of Forms 3 and 4 (17 CFR 249.103 and 249.104) and amendments thereto furnished to the registrant under 17 CFR 240.16a-3(e) during its most recent fiscal year and Forms 5 and amendments thereto (§ 249.105 of this chapter) furnished to the registrant with respect to its most recent fiscal year, and any written representation referred to in paragraph (b)(1) of this section:

\* \* \* \* \*

(2) For each such person, set forth the number of late reports, the number of transactions that were not reported on a timely basis, and any known failure to file a required Form. A known failure to file would include, but not be limited to, a failure to file a Form 3, which is required of all reporting persons, and a failure to file a Form 5 in the absence of the written representation referred to in paragraph (b)(1) of this section, unless the registrant otherwise knows that no Form 5 is required.

\* \* \* \* \*

(b) With respect to the disclosure required by paragraph (a) of this Item, if the registrant:

(1) Receives a written representation from the reporting person that no Form 5 is required; and

(2) Maintains the representation for two years, making a copy available to the Commission or its staff upon request, the registrant need not identify such reporting person pursuant to paragraph (a) of this Item as having failed to file a Form 5 with respect to that fiscal year.

## PART 229—STANDARD INSTRUCTIONS FOR FILING FORMS UNDER SECURITIES ACT OF 1933, SECURITIES EXCHANGE ACT OF 1934 AND ENERGY POLICY AND CONSERVATION ACT OF 1975—REGULATION S–K

3. The authority citation for part 229 continues to read as follows:

Authority: 15 U.S.C. 77e, 77f, 77g, 77h, 77j, 77k, 77s, 77z–2, 77z–3, 77aa(25), 77aa(26), 77ddd, 77eee, 77ggg, 77hhh, 77iii, 77jjj, 77nnn, 77sss, 78c, 78i, 78j, 78l, 78m, 78n, 78o, 78u–5, 78w, 78ll, 78mm, 79e, 79j, 79n, 79t, 80a–8, 80a–9, 80a–20, 80a–29, 80a–30, 80a–31(c), 80a–37, 80a–38(a), 80a–39, 80b–11, and 7201 *et seq.*; and 18 U.S.C. 1350, unless otherwise noted.

\* \* \* \* \*

4. Amend § 229.405 by revising the introductory text to paragraph (a), paragraph (a)(2) and paragraph (b) to read as follows:

### § 229.405 (Item 405)  Compliance with section 16(a) of the Exchange Act.

\* \* \* \* \*

(a) Based solely upon a review of Forms 3 and 4 (17 CFR 249.103 and 249.104) and amendments thereto furnished to the registrant under 17 CFR 240.16a-3(e) during its most recent fiscal year and Forms 5 and amendments thereto (§ 249.105 of this chapter) furnished to the registrant with respect to its most recent fiscal year, and any written representation referred to in paragraph (b)(1) of this section.

\* \* \* \* \*

(2) For each such person, set forth the number of late reports, the number of transactions that were not reported on a timely basis, and any known failure to file a required Form. A known failure to file would include, but not be limited to, a failure to file a Form 3, which is required of all reporting persons, and a failure to file a Form 5 in the absence of the written representation referred to in paragraph (b)(1) of this section, unless the registrant otherwise knows that no Form 5 is required.

\* \* \* \* \*

(b) With respect to the disclosure required by paragraph (a) of this Item, if the registrant:

(1) Receives a written representation from the reporting person that no Form 5 is required; and

(2) Maintains the representation for two years, making a copy available to the Commission or its staff upon request, the registrant need not identify such reporting person pursuant to paragraph (a) of this Item as having failed to file a Form 5 with respect to that fiscal year.

## PART 240—GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934

5. The authority citation for part 240 continues to read, in part, as follows:

Authority: 15 U.S.C. 77c, 77d, 77g, 77j, 77s, 77z–2, 77z–3, 77eee, 77ggg, 77nnn, 77sss, 77ttt, 78c, 78d, 78e, 78f, 78g, 78i, 78j, 78j–1, 78k, 78k–1, 78l, 78m, 78n, 78o, 78p, 78q, 78s, 78u–5, 78w, 78x, 78ll, 78mm, 79q, 79t, 80a–20, 80a–23, 80a–29, 80a–37, 80b–3, 80b–4, 80b–11, and 7201 *et seq.*; and 18 U.S.C. 1350, unless otherwise noted.

\* \* \* \* \*

6. Amend § 240.16b–3 by revising paragraph (d) and adding Note (4) to Notes to § 240.16b–3, to read as follows:

### § 240.16b–3  Transactions between an issuer and its officers or directors.

\* \* \* \* \*

(d) *Acquisitions from the issuer.* Any transaction involving an acquisition from the issuer (other than a Discretionary Transaction), including without limitation a grant or award, shall be exempt if:

\* \* \* \* \*

Notes to § 240.16b–3:

\* \* \* \* \*

Note (4): The exemptions provided by paragraphs (d) and (e) of this section apply to any securities transaction by the issuer with an officer or director of the issuer that satisfies the specified conditions of paragraph (d) or (e) of this section, as applicable. These exemptions are not conditioned on the transaction being intended for a compensatory or other particular purpose.

7. Section 240.16b–7 is revised to read as follows:

### § 240.16b–7  Mergers, reclassifications, and consolidations.

(a) The following transactions shall be exempt from the provisions of Section 16(b) of the Act:

(1) The acquisition of a security of a company, pursuant to a merger, reclassification or consolidation, in exchange for a security of a company that before the merger, reclassification or consolidation, owned 85 percent or more of either:

(i) The equity securities of all other companies involved in the merger, reclassification or consolidation, or in the case of a consolidation, the resulting company; or

(ii) The combined assets of all the companies involved in the merger, reclassification or consolidation, computed according to their book values before the merger, reclassification or consolidation as determined by reference to their most recent available financial statements for a 12 month period before the merger,

Federal Register / Vol. 69, No. 122 / Friday, June 25, 2004 / Proposed Rules    35989

reclassification or consolidation, or such shorter time as the company has been in existence.

(2) The disposition of a security, pursuant to a merger, reclassification or consolidation, of a company that before the merger, reclassification or consolidation, owned 85 percent or more of either:

(i) The equity securities of all other companies involved in the merger, reclassification or consolidation or, in the case of a consolidation, the resulting company; or

(ii) The combined assets of all the companies undergoing merger, reclassification or consolidation, computed according to their book values before the merger, reclassification or consolidation as determined by reference to their most recent available financial statements for a 12 month period before the merger, reclassification or consolidation.

(b) A merger within the meaning of this section shall include the sale or purchase of substantially all the assets of one company by another in exchange for equity securities which are then distributed to the security holders of the company that sold its assets.

(c) The exemption provided by this section applies to any securities transaction that satisfies the conditions specified in this section and is not conditioned on the transaction satisfying any other conditions.

(d) Notwithstanding the foregoing, if a person subject to Section 16 of the Act makes any non-exempt purchase of a security in any company involved in the merger, reclassification or consolidation and any non-exempt sale of a security in any company involved in the merger, reclassification or consolidation within any period of less than six months during which the merger, reclassification or consolidation took place, the exemption provided by this Rule shall be unavailable to the extent of such purchase and sale.

By the Commission.

Dated: June 21, 2004.

Margaret H. McFarland,

*Deputy Secretary.*

[FR Doc. 04–14406 Filed 6–24–04; 8:45 am]

**BILLING CODE 8010–01–P**