# EXHIBIT F

Securities and Exchange Commission

Re: Proposed Rule 16b-3(d)

We are attorneys who from time to time represent plaintiffs in §16(b) disgorgement litigation. We write to comment on the proposal to the extent it seeks to once again amend SEC Rule 16b-3(d) (the "Proposal"). We believe that the amendment is a serious mistake.

First, the SEC's premise that there is no opportunity for speculative abuse in transactions between the issuer and its officers and directors is demonstrably wrong. Second, it is beyond the power of the SEC -- and in clear derogation of congressional intent -- to give a wholesale exemption to §16(b) for directors and officers of public companies. Third, this attempt to undermine the holding of the Third Circuit in <u>Levy v. Sterling Holdings</u> is unseemly and will tend to bring the Commission into disrepute.

> I.   <u>The SEC's Basic Premise Is Faulty</u>

There is no support for the notion that there is no opportunity for speculative abuse in transactions directly between the issuer and its officers and directors. On the contrary, the Court's holding in Levy showed but one example of such an opportunity:

> The potential for self-dealing could be great: in a closely held corporation, directors or a majority of shareholders could arrange for the acquisition of stock in advance of an IPO, and turn around and sell shares shortly after the IPO. Because of their insider status, there would be a concern about speculative abuse injurious to other market participants.

1

*Levy v. Sterling Holding Co., LLC*, 314 F.3d 106, *124 (3d Cir. 2002)

There are scores of other possibilities: sales of stock by the issuer to the directors prior to a tender offer being just one. To allow the insiders to write their own pass from §16(b) simply aligns the SEC in favor of, as opposed to, insider trading.

II. The SEC has No Power to Undermine §16(b) In This Fashion

Article I, §1, of the United States Constitution vests "all legislative Powers herein granted . . . in a Congress of the United States." Therefore, it has been held that the Constitution requires that "when Congress confers decision making authority upon agencies *Congress* must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" *Whitman v. American Trucking Ass'n*, 531 U.S. 457, 472 (2001) (quoting, *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928). If Congress provides no guidance for the exercise of regulatory discretion, the agency may not promulgate any regulations. *Whitman*, 531 U.S. at 474.

In the case of §16(b), the "intelligible principle" is that "the transactions the SEC exempts are 'not comprehended within the purpose' of §16(b)." *Feder v. Martin Marietta Corp.*, 406 F.2d 260, 268 (2d Cir.1969) (quoting 15 U.S.C. §78p(b)). "Guiding the Commission in the exercise of an actually limited authority is the quite adequate standard -- illustrated by two specific statutory exemptions -- that its regulations be consistent with the expressed purpose of the statute." *Smolowe v. Delendo Corp.*, 136 F.2d 231, 240 (2d Cir. 1943). Those two statutory exemptions are (1) "unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted" and (2) "where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase . . . ." 15 U.S.C. §78p(b).

The Proposal exceeds the scope of these two Congressional exemptions. The version of Rule 16b-3(d) contained in the Proposal exempts from §16(b) liability every single transaction between an issuer and its officers

2

and directors. The only fig-leaf required is that the board or a committee of the board approve the transaction. Accordingly, officers and directors of a public company can essentially write themselves an exemption from §16(b) at will. Yet, the SEC in the Proposal, makes no effort to justify any need for this new rule except to "eliminate the uncertainty . . . " surrounding potential §16(b) liability. Proposal, 2004 SEC LEXIS 1278 at *14.

The theoretical underpinnings for the proposed new Rule 16b-3(d) is that "transactions between an issuer and its officers and directors, which are subject to fiduciary duties under state law." Proposal, 2004 SEC LEXIS at *9-10. That rationale, however, is fundamentally unsound as well as inconsistent with the statutory purpose of §16(b). Indeed, the very purpose animating the adoption of §16(b) was Congress' determination that state law was unequal to the task of preventing improper insider trading. *Kern County Land Co. v. Occidental Corp.*, 411 U.S. 582 at 592 n.3 (1973) (quoting S. Rep. No. 1455, 73 Cong. 2d Sess. 55 (1934)). Therefore, it is apparent that Congress did not wish for the SEC to rely on the existence of possible state law remedies as a means for displacing §16(b) liability. *Accord, Adams Fruit v. Barrett*, 494 U.S. 494 U.S. 638, 644 and note 2 (1990).

The Commission's rationale also fails to consider the difficulties in maintaining state law shareholder derivative actions. "[S]uch a suit is not as effective as a §16(b) claim because shareholders are subject to the . . . more stringent standing requirements of Rule 23.1, and, in addition, the complaint may be countered with subjective considerations of intent or good faith, such as a business judgment defense." *Mendell, on behalf of Viacom v. Gollust*, 909 F.2d 724, 729 (1989). *Accord, In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 378 & n.4 (9th Cir. 1995) (citing Thomas M. Jones, *An Empirical Examination of the Resolution of Shareholder and Class Action Lawsuits*, 60 B. U. L. Rev. 542, 544-45 (1980) (finding that derivative lawsuits which were not settled resulted in judgment for plaintiff in less than one percent of cases)).

The Commission's rationale also fails because it ignores that such state law remedies require the proof of intent or knowledge on the part of the insider. *See, e.g., Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 505 (Del. Ch. 2003) (citing *Brophy v. Cities Service, Inc.*, 70 A.2d 5

3

(Del. 1949)). In contrast, §16(b) is a strict liability statute. *See, e.g., Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 251 (1976); *see also, Heli-Coil Corp. Webster*, 352 F.2d 156, 165 (3d Cir.1965) (en banc) ("It was the intention of Congress in enacting §16(b) to obviate any necessity for a search of motives of the insider . . .") The element of intent was purposely omitted from §16(b) because Congress felt that "it will be absolutely impossible to prove the existence of such intention . . . ." *Kern County*, 411 U.S. at 592.

The commentary to the Proposal also ignores the procedural hurdles that stand in the way of proceeding with a shareholder derivative lawsuit and how §16(b) eliminates those hurdles. Specifically, §16(b) contains a universal demand requirement and if that demand is refused, the plaintiff can proceed to filing a complaint without inquiring as to whether the issuer's board of directors properly fulfilled their fiduciary duties in declining to initiate the lawsuit. *See* 15 U.S.C. §78p(b). In contrast, a plaintiff making a demand to sue under state law must abide by the decision of the board of directors as to the wisdom of a lawsuit. "Absent an abuse of discretion, of the requirements of the traditional business judgment rule are met, the board of directors decision not to pursue the derivative claim will be respected by the courts." *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990). Suing based upon allegations of demand futility also imposes a high procedural hurdle on a plaintiff seeking to commence a lawsuit. *See, e.g., Beam v. Stewart*, 845 A.2d 1040 (Del. 2004).

It is clear that state law breach of fiduciary duty claims are no substitute for §16(b) and it is just as clear that Congress did not intend that they should be. The Commission is not Congress and it has no power to provide a gaping hole in §16(b) enforcement. [1]

---

[1] *See Green v. Dietz*, 247 F.2d 689, 692 (2d Cir. 1957)(in dicta, the court expressed doubt as to whether the SEC possessed the power to promulgate rule 16b-3); *Perlman v. Timberlake*, 172 F.Supp. 246, 249-52, 255-56, 258 (S.D.N.Y. 1959)(holding that rule 16b-3 is in conflict with the expressed purpose of the statute, and therefore invalid).

4

### III. It Is Shocking That, In this Environment, The Commission Would Attempt to Protect Rather Than Curb Insider Trading

There can be no question that the Proposal creates the anomalous situation whereby one or more insiders can simply write themselves an exemption from §16(b). What is perplexing is why the Commission would want to take this position in this environment.

It is no secret that, in recent years, the financial markets have been stunned by the frauds perpetrated by market timers in the mutual fund industry and the research analysts at the large investment banks. Now, the Commission is not only trying to align itself with insider trading, it is doing so in a way that is plainly beyond its power. The result is that this Proposal, should it be adopted, will be struck down by the Third Circuit or any other court that considers the matter.

It is unseemly for the Commission to be engaged in such an effort. All it will do is further erode the reputation of an agency that is supposed to ensure that there is a level playing field in the financial markets for insiders and public investors alike.

Very truly yours,

Paul D. Wexler

5